Filed 7/15/26  P. v. Ross CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ROBERT MELVIN ROSS III,<br><br>        Defendant and Appellant. | A172361<br><br>(Sonoma County<br>Super. Ct. No. SCR7590301) |

This is an appeal from final judgment after defendant Robert Melvin Ross III was convicted by a jury of attempted voluntary manslaughter, first degree robbery, elder abuse, and mayhem.  Defendant, who represented himself at trial, was sentenced to 10 years in prison.  He now challenges the judgment on grounds of prejudicial evidentiary errors relating to impeachment and prosecutorial misconduct.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On January 23, 2024, an amended information[1] was filed charging defendant with attempted willful, deliberate and premeditated murder (Penal Code,[2] §§ 664, 187, subd. (a); count 1); first degree residential robbery (§ 211; count 2); elder abuse (§ 368, subd. (b)(1); count 3); and aggravated

---

[1]  The original felony complaint was filed on December 16, 2022.

[2]  Unless otherwise stated, all statutory citations are to the Penal Code.

1

mayhem (§ 205; count 4).  As to each count, the amended information alleged defendant personally used a deadly weapon (§ 12022, subd. (b)(1)) and personally inflicted great bodily injury (§ 12022.7, subd. (a)).  Finally, the amended information alleged seven factors in aggravation relating to the crime and four such factors relating to defendant.

A jury trial began on January 26, 2024, with defendant representing himself in propria persona.[3]

## I.      The Prosecution's Case

On December 7, 2022, the victim, 65-year-old Matthew B., encountered an acquaintance, Angela B., outside his apartment building with an unknown man, later identified as defendant.  The victim entered the building to return to his apartment, after which defendant and Angela B. knocked on his door.  The victim let them in, and defendant asked to take a shower.  The victim agreed.

After defendant showered, he began rummaging through the victim's belongings.  The victim suspected defendant was looking for money, which the victim had hidden in a magazine.  The victim approached defendant and asked what he was doing.  A physical altercation between the men ensued.  At some point, the men "hit the deck wrestling."  Defendant then "came up with a knife" and stabbed the victim in the neck.  The victim testified that he did not have a knife in his hand and insisted the knife that defendant used was not from his apartment.  While the victim got a towel to stem the flow of blood from his neck, defendant and Angela B. left the apartment.

_____

[3]  On October 20, 2023, defendant requested permission to represent himself pursuant to *Faretta v. California* (1975) 422 U.S. 806.  After defendant was evaluated by a psychiatrist, the court granted his request on December 6, 2023.

2

A police officer responding to a 911 dispatch found the victim with a deep neck laceration that required stapling and hospitalization. Several items were missing from the victim's apartment, including his laptop, cell phone and "other minor things," and there was no sheet on his bed. About three days later, the victim found a knife that did not belong to him in a closet.

Surveillance video footage from the night of the stabbing showed defendant, Angela B. and the victim in the lobby. Defendant and Angela B. then left as the victim waited in the lobby. Shortly thereafter, the pair returned and entered the elevator. About 40 minutes after that, Angela B. left the building. Defendant followed about a minute later. Defendant wore a sheet over his head and carried property that he did not have when he entered the building. The police later found a white sheet under a vehicle outside the apartment building.

Four days after the stabbing, defendant fled when a sheriff's deputy parked in front of him. A chase ensued, after which defendant was caught and arrested. Defendant had in his front pocket a fixed-blade knife and a folding knife. He wore a necklace with an empty knife sheath, into which the fixed-blade knife fit.

Defendant, when interviewed, initially denied knowing Angela B. or anything about the victim's stabbing. However, after being confronted with the surveillance footage, defendant admitted being the individual in the lobby with a sheet over his head. He refused to comply with a search warrant for DNA evidence.

## II. The Defense Case

Defendant testified at trial. He acknowledged being in the victim's apartment with Angela B. on the day in question. After taking a shower,

defendant saw Angela B. "bolting toward the door" with a magazine in her hands.  She bumped into defendant and handed him the magazine.  Defendant was not aware there was money inside the magazine.  However, when the victim turned around and saw defendant holding the magazine, the victim grabbed it from him and placed it on a dresser.  He then turned back around with a knife and tried to cut defendant.  Defendant pushed the victim's hand into the air and pushed the victim onto a bed.  Defendant ran towards the door, grabbing Angela B.'s hand to bring her along.  Defendant had "no idea" the victim was injured because he did not look back.

On cross-examination, defendant explained that he left the victim's apartment wearing a sheet over his head because he was freezing cold.  He fled from a sheriff's deputy a few days later because he heard the roar of an engine and believed he was being attacked.  He did not obtain the necklace with a knife sheath until the night after the victim was stabbed.

## III.    The Verdict, Bifurcated Hearing, and Sentence

On February 9, 2024, the jury found defendant guilty as charged on counts 2 through 4.  As to count 1, the jury found him guilty of the lesser offense of attempted voluntary manslaughter.  The jury found true the allegations of personal use of a deadly weapon and personal infliction of great bodily injury.  The jury also found true six alleged aggravating factors relating to defendant's crime and one alleged factor relating to defendant.

Following a bifurcated hearing, the trial court found true the remaining three alleged aggravating factors relating to defendant.  The court also partially granted defendant's motion for new trial after finding insufficient evidence to support count 4 and reducing the conviction to simple mayhem.

On December 30, 2024, defendant was sentenced to a total prison term of 10 years.

4

On January 3, 2025, defendant filed a timely notice of appeal.

**DISCUSSION**

Defendant contends the trial court prejudicially erred by precluding him from offering evidence of Angela B.'s misdemeanor offenses for impeachment purposes and by permitting the prosecution to impeach him with evidence of his own past misdemeanor convictions. Additionally, defendant contends the prosecutor committed prejudicial misconduct during closing arguments by misstating to the jury that he was not raising a self-defense claim. We address these issues in turn, *post*.

## I.    Challenge to Evidentiary Rulings

All relevant evidence is admissible except as otherwise provided by statute. (Evid. Code, § 351.) Relevant evidence is "evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) Under Evidence Code section 352, a trial court has discretion to exclude otherwise admissible evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

" '[A]ny criminal act or other misconduct involving moral turpitude suggests a willingness to lie and is not necessarily irrelevant or inadmissible for impeachment purposes.' ([Citations]; Cal. Const., art. I, § 28, subd. (f)(2) [truth-in-evidence provision]; Evid. Code, § 788 [authorizing prior felony convictions for impeachment].) 'In general, a misdemeanor—or any other conduct not amounting to a felony—is a less forceful indicator of immoral character or dishonesty than is a felony. Moreover, impeachment

5

evidence other than felony convictions entails problems of proof, unfair surprise, and moral turpitude evaluation which felony convictions do not present. Hence, courts may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value.' [Citation.] 'The trial court's determination that the evidence was proper impeachment is reviewed for abuse of discretion.' [Citations.] ' "[T]he court's ruling will not be disturbed unless made 'in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*People v. Alvarez* (2025) 18 Cal.5th 387, 456.)

### A. Impeachment of Angela B.

Defendant contends the trial court abused its discretion by precluding him from impeaching Angela B. with evidence of "her prior misdemeanor conduct involving theft and fraud" without weighing the evidence for admissibility under Evidence Code section 352.

The People counter that defendant forfeited his contention by failing to raise it below and that, in any event, he cannot establish prejudicial error.

We agree with the People that defendant forfeited his challenge to the trial court's ruling limiting his impeachment of Angela B. Moreover, even if defendant had preserved his challenge on appeal, it would fail because the record establishes the trial court's ruling was not an abuse of discretion. The relevant facts are as follows.

Before trial, the prosecutor filed a motion in limine requesting that, if defendant intended to "use any prior bad conduct evidence for the purpose of impeachment of any witness," the court rule outside the presence of the jury on the admissibility of such evidence under Evidence Code sections 352 and 402.

6

Defendant thereafter asked to impeach the prosecutor's witness, Angela B., by presenting evidence, including police reports, related to her "history of financial abuse and quite a few thefts, alcohol-drug related burglaries," as well as her arrests in 2023 that did not result in conviction for stealing $200 and committing theft by use of an access card.

The trial court advised defendant there "are rules related to impeaching people," and asked whether Angela B. had any "convictions that are deemed to be crimes of moral turpitude." The court also noted it would need to know when the crimes took place in order to "determine if they're too remote in time or what."

The court and the parties then went through Angela B.'s criminal history to identify her misdemeanor convictions that involved crimes of moral turpitude. Ultimately, the prosecutor identified three such convictions—to wit, theft from an elder, receiving stolen property, and appropriation of lost property. The court then ruled that defendant could impeach Angela B. regarding those three convictions without mentioning the underlying facts, explaining, "[Y]ou don't want to have a trial within a trial." Defendant responded, "All right."

Defendant subsequently cross-examined Angela B. about her conviction for theft from an elder. She denied it. In response, defendant made no attempt to impeach her by introducing a certified conviction record.[4] Nor did defendant ask her about the other two misdemeanor convictions that the court ruled were admissible for impeachment purposes.

---

[4] Earlier, during the hearing on the prosecution's in limine motion, defendant had expressed concern that Angela B. would deny the convictions. The court responded: "Well you will ask the question and if she goes sideways, we'll get some certified record from the court and the jury will see them. That's the way." Defendant did not follow the court's advice.

On this record, we agree with the People that defendant forfeited his challenge to the court's ruling on impeaching Angela B. The law is clear: "[D]efendant's failure to make a timely and specific objection on the ground he now raises forfeits the claim on appeal." (*People v. Pearson* (2013) 56 Cal.4th 393, 416.) Here, defendant raised no objection whatsoever to the court's ruling that he could only impeach Angela B. by questioning her about three prior misdemeanor convictions based on crimes of moral turpitude without mentioning the underlying details. Accordingly, his challenge on appeal is indeed forfeited. (Accord, *People v. Oyler* (2025) 17 Cal.5th 756, 850.)

In any event, contrary to defendant's claim, we disagree that the trial court failed to conduct the proper analysis under Evidence Code section 352. The prosecution's motion in limine was expressly based on Evidence Code section 352. Further, at the hearing on the motion in limine, the trial court focused on the key issue—whether each misdemeanor offense identified in Angela B.'s criminal history was relevant to her willingness to lie. (*People v. Wheeler* (1992) 4 Cal.4th 284, 292, 295–296; *People v. Gutierrez* (2018) 28 Cal.App.5th 85, 89 [specific instances of nonfelony misconduct are admissible to impeach a witness only if such an instance "involves moral turpitude and thus is relevant to show a willingness to lie"].) In addition, the court considered other relevant factors under Evidence Code section 352, such as the remoteness of the offenses and, in the court's words, the importance of avoiding a "trial within a trial." (See *People v. Merchant* (2019) 40 Cal.App.5th 1179, 1192–1193.)

On this record, defendant fails to prove the court's decisionmaking was " ' " ' arbitrary, capricious, or patently absurd [such that it] resulted in a manifest miscarriage of justice.' " ' " (*People v. Alvarez, supra,* 18 Cal.5th at

p. 456.)  This is particularly so given that, during Angela B.'s cross-examination, defendant chose to mention only one of the three misdemeanor convictions based on crimes of moral turpitude that the trial court ruled were admissible.  Moreover, after Angela B. denied having been convicted of the crime of theft from an elder, defendant made no attempt to impeach her credibility by confronting her with the record of her conviction.  Under these circumstances, we conclude there was no abuse of discretion, much less prejudicial error.  The court's ruling stands.

## B.      Impeachment of Defendant

Defendant next argues the trial court abused its discretion by permitting the prosecutor to impeach him with evidence of his own past misdemeanor convictions.  This argument, similar to his previous one, fails on forfeiture grounds and on the merits.  We begin with the relevant facts.

At trial, the prosecutor cross-examined defendant regarding his four prior felony convictions as well as his prior misdemeanor convictions for possession of burglary tools, petty theft, and contempt of court.  Defendant admitted prior felony convictions for receiving stolen property in 2018 and 2022 and for removal of a memento from human remains in 2021.  He also admitted a misdemeanor conviction for domestic violence in 2019.  And, after being confronted with evidence, he admitted a 2017 felony conviction for aggravated assault and a 2023 misdemeanor conviction for battery.

Defendant now contends evidence of the two misdemeanors, domestic violence and battery, "likely had a substantial impact on the jury's determination of [his] credibility" and "likely caused the jury to perceive [him] as a violent person … lacking in moral values."  However, as before, defendant failed to raise a timely and specific objection based on these

9

arguments in the trial court, such that he has forfeited the right to do so on appeal. (*People v. Pearson, supra,* 56 Cal.4th at p. 416.)

In so holding, we reject defendant's claim that an objection in this case would have been futile. As the California Supreme Court warns, the futility exception only applies in " 'unusual circumstances' " or "extreme case[s]." (*People v. Riel* (2000) 22 Cal.4th 1153, 1212, italics omitted.) This is not such a case. (Accord, *People v. Hillhouse* (2002) 27 Cal.4th 469, 502 [declining to apply the futility exception when "[t]he trial atmosphere ... was not poisonous ... and the record fail[ed] to establish that objections would have been futile"].)

Moreover, putting aside his forfeiture, defendant has not established the trial court's ruling was prejudicial error. As the People note, the jury heard admissible evidence relating to four prior felony convictions involving moral turpitude, including one from 2021 involving removing a memento from human remains. Defendant also volunteered a felony assault conviction for stabbing someone.

Under these circumstances, it is not reasonably probable that exclusion of evidence of two misdemeanor convictions for battery and domestic violence would have resulted in a more favorable verdict for defendant. (*People v. Castro* (1985) 38 Cal.3d 301, 319; see *id.* at p. 315 ["Obviously it is easier to infer that a witness is lying if the [crime] of which he has been convicted involves dishonesty as a necessary element than when it merely indicates a 'bad character' and 'general readiness to do evil.' Nevertheless, it is undeniable that a witness' moral depravity of any kind has some 'tendency in reason' (Evid. Code, § 210) to shake one's confidence in his honesty."].)

## II.    Prosecutorial Misconduct

Lastly, defendant contends the prosecutor committed prejudicial misconduct by mischaracterizing his theory of self-defense during closing arguments.  We disagree.

The record reflects that, before closing arguments, the trial court instructed the jury on defendant's theories of the case, including self-defense and imperfect self-defense.  Yet, as defendant argues, despite his testimony that the victim came after him with a knife, leading to a tussle during which the victim was somehow stabbed, the prosecutor told the jury that he did "not seem" to be arguing self-defense and was "not claiming" self-defense.  The prosecutor also argued that "there is no claim of self-defense," and the self-defense instruction "does not apply," because "[defendant] cannot explain how the victim's neck was slashed deeply … ."

Once the prosecutor completed his argument, the trial court promptly admonished the jury that, among other things, "you [must] consider all of the instructions that are given and decide whether they apply or not, all right?  That is your decision after you consider the evidence that was presented."  The court later told defendant and the prosecutor this admonishment was intended to address the prosecutor's "very, very aggressive" comments on self-defense.  Defendant acknowledges the court's ameliorative instruction, but claims it was insufficient to cure the prejudice caused by the prosecutor's improper argument.  The law suggests otherwise.

"A prosecutor engages in misconduct by misstating facts, but enjoys wide latitude in commenting on the evidence, including the reasonable inferences and deductions that can be drawn therefrom."  (*People v. Hamilton* (2009) 45 Cal.4th 863, 928.)  " ' "A prosecutor's misconduct violates the Fourteenth Amendment to the United States Constitution when it 'infects

the trial with such unfairness as to make the conviction a denial of due process.' [Citations.] In other words, the misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' [Citation.] A prosecutor's misconduct that does not render a trial fundamentally unfair nevertheless violates California law if it involves 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' " ' [Citation.] … We consider the assertedly improper remarks in the context of the argument as a whole." (*People v. Covarrubias* (2016) 1 Cal.5th 838, 894.)

Here, the prosecutor did not employ deceptive or reprehensible methods that rendered defendant's trial fundamentally unfair. Defendant testified that the victim came after him with a knife, prompting defendant to push the victim's hands away and shove him onto a bed in order to avoid the attack. Defendant insisted he did not realize the victim was stabbed in the throat, and believed that it must have happened when the victim rolled on the bed while holding the knife. In his closing statement, defendant reiterated this point, stating "the injury … was caused … without [his] consciousness."

Thus, the prosecutor permissibly argued, based on reasonable inferences drawn from this testimony, that defendant was not claiming self-defense because he denied stabbing the victim or even knowing he was stabbed. While it is true the trial court granted defendant's request to instruct the jury on self-defense, a prosecutor is entitled to comment on the absence of evidence supporting a defendant's theory of the case. (See, e.g., *People v. Thomas* (2012) 54 Cal.4th 908, 945 [no misconduct when the prosecutor remarked that no witnesses came forward to provide alibi evidence for defendant]; *People v. Brady* (2010) 50 Cal.4th 547,

12

566 [no misconduct when "[t]he prosecutor's comments, rather than being a direct (or even indirect) reference to defendant's silence, constituted reasonable comment on defendant's failure to introduce material evidence or logical witnesses"], overruled on other grounds in *People v. Bankston* (June 1, 2026, S044739) \_\_\_ Cal.5th \_\_\_ <https://www4.courts.ca.gov/opinions/documents/S044739.pdf>.) The prosecutor's statements were a fair comment on the evidence (or lack thereof) and fell within the wide latitude he was afforded to argue the People's case. (*People v. Hamilton, supra,* 45 Cal.4th at p. 928.)

Moreover, "[w]hen a claim of misconduct is based on the prosecutor's comments before the jury, ' "the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." ' " (*People v. Friend* (2009) 47 Cal.4th 1, 29.) " '[W]e "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*People v. Wilson* (2005) 36 Cal.4th 309, 338.)

Here, defendant has not shown it is reasonably likely he would have obtained a better result absent the prosecutor's statements. The court instructed and admonished the jury repeatedly that the prosecutor's arguments were not evidence, and that it was the jury's duty to consider all the evidence and then to decide whether a particular instruction was applicable. As stated *ante*, the court also gave instructions on defendant's theories of the case, including self-defense as an affirmative defense to counts 1, 3 and 4 and imperfect self-defense as a lesser included offense to attempted murder. We presume the jury followed the court's instructions and admonishments. (*People v. Reyes* (2016) 246 Cal.App.4th 62, 77–78.) For these reasons, defendant's misconduct claim fails.

## DISPOSITION

The judgment is affirmed.

Jackson, P. J.

WE CONCUR:

Simons, J.
Chou, J.

A172361/*People v. Ross*